JOHNSON *v.* GRONDIN.

1. INTOXICATING LIQUORS — CIVIL-DAMAGE ACTION — PLEADING — BOND OF LIQUOR DEALER.

In an action under the civil-damage law, a declaration averring that a bond in due statutory form was filed by defendant, a saloonkeeper, that defendant sold plaintiff's husband liquors under circumstances averred in detail rendering the sales unlawful, sufficiently stated a breach of the condition of the bond which was set out in full.

2. Same—Execution of Bond—Declaration.

And in the absence of a demurrer, averments that defendant duly executed the bond required by statute, that the other defendant became surety, and the instrument was duly filed, were not objectionable for failing to allege that it was signed, sealed and executed by defendant.

3. Same.

Nor was it insufficient for not averring that the liquor dealer paid the tax and received and posted the receipt and notice, or that the defendant surety, a corporation, was authorized by statute to execute liquor bonds.

4. Same—Damages—Loss of Support.

Averments that by reason of the sums spent by plaintiff's husband for liquors, etc., he was unable to furnish plaintiff with necessary means of support, and plaintiff thereby had been injured in property and means of support, warranted proof of damage to her property and means of support.

5. Same—Ill-Treatment.

Under a charge of ill-treatment, calling plaintiff vile and obscene names in the presence of her children, neighbors, and others, plaintiff was correctly permitted to show that her husband charged her with infidelity.

6. Same—Trial—Parent and Child.

The objection that plaintiff introduced evidence that she had children was not sufficient to reverse the case, where the evidence was otherwise competent, being introduced to show who prepared the written notice served on defendant and who was present when it was served, and where plaintiff's son was called as a witness to substantiate her testimony.

7. Same—Witnesses.

It was not incompetent to introduce plaintiff's son as a witness for such purpose, or to show that he was present when plaintiff's husband mistreated her, and that he was her son.

8. Same—Sales—Evidence.

It was not error to introduce evidence of sales of liquor made to plaintiff's husband by defendant at hours prohibited by law and on Sundays and holidays, or to cross-examine one of defendant's witnesses for the same purpose.

9. Same—Cross-Examination.

While proof of other illegal sales may be erroneous, plaintiff's counsel was within his rights in cross-examining defendant as to whether he sold liquor to any one on the 22nd of February, on which day plaintiff's husband was shown to have pur-

chased intoxicants of defendant: and the answers, being negative, did not prejudice defendant.

10. SAME—DAMAGES—MENTAL SUFFERING.
 Evidence of plaintiff's mental suffering was sufficient to authorize the jury in awarding damages therefor as a result of assaults and other mistreatment, although no proof of the extent or value of such suffering was presented.

11. SAME—PREVIOUS HABITS.
 Defendants were liable for the injury, if any, done to plaintiff's wife in furnishing liquors so as to enable her husband to continue the habit of drunkenness previously formed.

Error to Schoolcraft; Oren, J. Submitted April 8, 1912. (Docket No. 62.) Decided May 31, 1912.

Case by Anna Johnson against Philip Grondin and the Michigan Bonding & Surety Company for illegal sales of liquor to plaintiff's husband. Judgment for plaintiff, defendants bring error. Affirmed.

*L. H. Fead, F. T. McDonald,* and *A. F. Bunting,* for appellants.

*C. W. Dunton, V. I. Hixson,* and *F. P. Sullivan,* for appellee.

STONE, J. This action is brought under the provisions of the civil-damage law (Act No. 313, Pub. Acts 1887, § 20, 2 Comp. Laws, § 5398) against the keeper of a saloon and his bondsmen. The declaration consists of two counts. The first count alleges that on, to wit, May 1, 1909, and continuously from that time to the time of the commencement of suit, which was on November 4, 1910, the defendant Philip Grondin was engaged in the business and occupation of selling spirituous and intoxicating liquors at retail in the township of Seney, in Schoolcraft county; and that to enable him to engage in said business he on, to wit, May 1, 1909, gave a duly executed bond in compliance with the law, upon which bond the defendant

170 MICH.—29.

the Michigan Bonding & Surety Company became and was the surety; and that he on, to wit, May 1, 1910, to enable him to engage in said business, gave a like bond with the same surety; and that each of said bonds, so executed and given as aforesaid, was approved by the township board of the township of Seney; and that each of said bonds with the certificate of approval of said board was duly filed with the treasurer of said county, and a copy of each of said bonds was attached to and made a part of the declaration, and they were offered and received in evidence and are described in the record, the first one being Exhibit 1, as retail liquor dealer's bond in the form prescribed by statute in the penal sum of $3,000, signed by Philip Grondin as principal, and the Michigan Bonding & Surety Company as surety, covering the period from May 1, 1909, to April 30, 1910, at Grondin's hotel building in Seney, Schoolcraft county. Plaintiff's Exhibit 2 is described as a bond same as last above covering the period from May 1, 1910, to April 30, 1911.

The declaration alleges that the plaintiff had for 15 years last past been and remained the lawful wife of John Johnson, and that during said time they had lived and cohabited together at said township of Seney, where said Johnson had been engaged in the occupation of sectionman for a railroad company, earning the sum of, to wit, $60 per month for such work.

The first count of the declaration further alleges that said John Johnson on, to wit, May 1, 1909, was, and since said time has remained, a person addicted to the use of spirituous and intoxicating liquors, and in the habit of becoming intoxicated; and that said plaintiff on, to wit, the 1st day of May, 1909, notified the said Philip Grondin to cease and refrain from selling, giving, or furnishing said John Johnson with spirituous or intoxicating liquors, which said request so made by said plaintiff was thereafter frequently repeated; and that on, to wit, December 1, 1909, the said plaintiff served upon said Philip Grondin

a written notice forbidding him, the said Philip Grondin, to sell, furnish, give, or deliver any spirituous or intoxicating liquors to the said John Johnson. The declaration proceeds to allege that, despite the notices, both verbal and written, so served upon him by the plaintiff, the said Grondin did frequently after May 1, 1909, by himself, his servant, agent, or representative sell, give, and furnish to the said Johnson, at said defendant's saloon and place of business, large quantities of spirituous and intoxicating liquors which had continued from said time down to the commencement of this suit; and that by reason thereof said Johnson had frequently become intoxicated and spent large sums of money for intoxicating liquors in the said saloon and place of business of the said defendant

It was further alleged that the money spent as aforesaid for intoxicating liquors by said Johnson in said saloon and place of business of said defendant Philip Grondin had taken the greater part of the earnings and wages of said husband of plaintiff, and that by reason thereof the said husband had since May 1, 1909, been unable to furnish plaintiff the necessary and usual means of support, raiment, food, and living, which was and is reasonably the plaintiff's due from the wages so earned and received by her said husband, and that the said husband of said plaintiff, by reason of said money so paid by him to said defendant Philip Grondin for intoxicating liquors, had failed and neglected to furnish the plaintiff with the necessary means of support, whereby and by reason of which the plaintiff had been injured in property and means of support in a large sum, to wit, $1,000.

The second count of the declaration, after the statement in the introductory part thereof—substantially the same as the first count as to the business of defendant Grondin and notice to him and the furnishing of liquors—alleges that plaintiff's said husband shortly after, to wit, May 1, 1909, and on other days and times between that date and the commencement of the suit, became drunk and intoxicated, and by being so intoxicated, or in consequence

thereof, frequently on divers days and times assaulted, beat, wounded, and ill-treated the plaintiff, caused her great bodily pain and suffering, called her vile and obscene names in the presence of her children, neighbors, and others, drove her from her home, threatened to take her life, and caused the plaintiff to suffer great and grievous anguish and care of body and mind, shame, mortification, and disgrace, depriving her of the society of her friends and acquaintances, and other wrongs to the plaintiff to her great damage to the amount of $2,000, all of which injuries were caused by the unlawful selling, giving, and furnishing and delivering of intoxicating liquors by said Philip Grondin to said John Johnson.

The trial of the case before a jury resulted in a verdict and judgment for the plaintiff in the sum of $750 damages and costs. The defendants have removed the case to this court, and there are 28 assignments of error in the record. We shall discuss such questions as are raised by defendants in their brief; the same appearing to be covered by assignments of error. (1) It is first claimed by defendant Bonding Company that no testimony should have been permitted to be introduced under the declaration for the following reasons: (a) The declaration does not sufficiently assign a breach of the bonds mentioned in the declaration whereby the defendants became liable to the plaintiff. (b) The plaintiff's declaration does not allege that the defendant Philip Grondin paid the tax and received the receipt from the county treasurer and posted up the notice required by the statute. (c) The plaintiff's declaration does not allege that the bonds mentioned in the declaration were signed, executed and sealed by this defendant. (d) The plaintiff's declaration does not charge that the defendant Bonding Company was authorized under the statute to execute liquor bonds and do business thereon.

1. We do not think that there is any merit in the above objections. It appearing that the bonds were in the statutory form, the allegation of the sales and furnishing of

liquors under the circumstances stated in the declaration constituted a sufficient allegation of a breach of the bonds.

It being alleged that the defendant Philip Grondin duly executed the statutory bonds in compliance with the law, and that the Michigan Bonding & Surety Company became surety, and that the same were duly approved by the township board and filed with the county treasurer, we think the declaration sufficient. We think the declaration wherein it alleges that the bonds were executed in compliance with the statute is broad enough to admit evidence, in the absence of a demurrer.

2. It is urged that the declaration was not sufficient to allow evidence of damage to plaintiff in her property or means of support. We cannot agree with this contention. The declaration alleges, as we have already indicated, that, by reason of intoxicating liquors having been furnished the plaintiff's husband by the defendant, the husband frequently became intoxicated and spent large sums of money at said place for intoxicating liquors, that it took a greater part of his wages, and by reason thereof he was unable to furnish the plaintiff the necessary and usual means of support, raiment, food, and living which were reasonably her due from the wages and earnings of her husband, all of which it is said damaged her in her means of support. This element of damage is within the statute, and we think the point should be ruled against the defendants upon the authority of *Rouse* v. *Melsheimer*, 82 Mich. 172 (46 N. W. 372). This is not an action to recover back money as was the case of *Friend* v. *Dunks*, 39 Mich. 733, cited by defendants' counsel under a former statute.

3. It is urged that the court erred in overruling defendants' objection to the question asked of the plaintiff relative to her husband's conduct, as follows:

"*Q*. Did he on any of these occasions charge you with being untrue to him?"

We do not think there is any merit in this assignment

of error. The declaration had claimed that her husband among other things had ill-treated her and called her vile and obscene names in the presence of her children, neighbors, and others, and had caused the plaintiff to suffer great and grievous anguish in body and mind, shame, mortification, disgrace, etc. We think that it was a sufficient charge of ill-treatment to warrant the admission of this testimony. Most certainly it is not necessary that the declaration should set forth the testimony in the case.

4. The next assignments of error allege that the court erred in permitting the introduction into the case of the fact that the plaintiff had children. This subject is treated under the third, fourth, fifth, sixth, seventh, eighth, ninth, and thirty-third assignments of error; the last assignment relating to the charge of the court where, in stating the claim of the plaintiff, the court said that the plaintiff claimed that the conduct of her husband when intoxicated had caused her great bodily pain and suffering, he (the husband) calling her vile and obscene names in the presence of her children, neighbors, and others, etc., quoting the language of the declaration.

The testimony above referred to is a part of the direct examination of the plaintiff where her counsel were seeking to show service of written notice upon the defendant Grondin, and the following occurred:

"*Q.* Where did you go to serve it?

"*A.* I took my little boy with me and he went—

"*Mr. Bunting* (interrupting): I desire to strike out testimony as to any other member of the family.

"*The Court:* That may be stricken out.

"*Mr. Bunting:* Incompetent, irrelevant and immaterial.

"*Q.* Did you go into the place or did he come out at the time you served him with the notice?

"*Mr. Bunting:* Object to that as leading.

"*The Court:* You may take the answer.

"*A.* Outside. My little boy called Mr. Grondin out.

"*Mr. Bunting:* I desire an exception to the statement of witness as to other members of the family.

"*The Court:* That answer may stand.

"*Mr. Bunting:* Exception follows the rule?

"*The Court:* Yes.

"*A.* I served the notice some time after the 15th of January, 1910.

"*Q.* I show you a paper and ask you if it is the notice which you handed to Mr. Grondin on that occasion?

"*A.* I can't read any English; the little boy wrote it for me.

"*Mr. Bunting:* Same exception as to the little boy.

"*The Court:* That may stand.

"*A.* I don't know whether that is the paper; I can't read English."

In order to identify paper, witness Anna Johnson withdrawn by leave of court, and Albert Johnson was sworn on behalf of plaintiff and testified as follows:

"My name is Albert Johnson and I am 12 years old; I live at Seney.

"*Q.* Is Mrs. Johnson your mother?

"*A.* Yes, sir.

"*Mr. Bunting:* Object to that as incompetent, irrelevant, and immaterial.

"*Mr. Dunton:* I will withdraw the question.

"*Q.* I show you a paper and ask you if that is in your handwriting?

"*A.* Yes, that is.

"*Q.* All of it?

"*A.* I don't know.

"*Q.* Is this in your handwriting?

"*A.* Yes, sir.

"*Q.* You wrote it?

"*A.* Yes, sir.

"*Q.* Who, if anyone, asked you to write it?

"*A.* My mother asked me to write it.

"*Q.* Mrs. Johnson?

"*A.* Yes, sir.

"*Mr. Bunting:* I desire an exception to the counsel asking that question.

"*The Court:* Object to his asking? I think so far as he has asked the questions are competent.

"*Mr. Bunting:* I now move to strike out the answer that his mother asked him to write it, and question of counsel, 'Mrs. Johnson,' and his answer, and I move to strike that out as incompetent, irrelevant, and immaterial.

"*Mr. Sullivan:* We consent to the striking out of that

part of the question, I think it was, 'Did your mother,' 'Who did you write it for,' and 'For my mother,' the answer.

"*The Court:* It may be stricken out.

"*Mr. Bunting:* I want an exception to the counsel asking the question to get it before the jury and then consenting to strike it out, and an exception to the question asked the wife a while ago as to her boy.

"*The Court:* Well, that appears on the record."

Cross-examination:

"This paper was written at my home.

"*Q.* Did your mother read to you what she wanted to go into this?

"*A.* Yes, she stated it to me. I wrote it down. If I am not mistaken, I think I signed the paper. The name signed there as Mrs. John Johnson is in my handwriting."

On behalf of plaintiff, Anna Johnson was recalled and testified further as follows:

"*Q.* What, if anything, did you do with this paper which I hold in my hand?

"*A.* I went out and took it in my hand and took my little boy with me and went to Grondin's and told him—

"*Mr. Bunting* (interrupting): I want my same objection, and move to strike out the plaintiff's 'little boy.'

"*The Court:* That may be stricken out.

"*Q.* Where did you give it to Mr. Grondin?

"*A.* Right outside of Grondin's.

"*Q.* Place of business in Seney?

"*A.* Yes, sir.

"*Mr. Dunton:* We now offer this paper in evidence.

"*Mr. Bunting:* Object to it as not being dated and as not being sufficiently identified.

"*The Court:* It may be received in evidence. (Marked 'Plaintiff's Exhibit 3.')

"*Q.* Did you write any part of that paper?

"*A.* No, sir.

"*Q.* Who did write it?

"*A.* My little boy.

"*Q.* Did you tell him what to write?

"*Mr. Bunting:* Same objection and motion to strike.

"*The Court:* I understand that your objection is directed to the introduction of the boy, or at least bring it out in this matter?

"*Mr. Bunting:* Yes.

"*The Court:* Not having put the question as leading? I think the question is proper other than it may be rather leading. (To which ruling the defendants excepted.)

"*A.* I told Albert Johnson what to write."

It is the claim of the appellant that the principle involved in these assignments of error has been covered by the following cases in this court: *Larzelere* v. *Kirchgessner,* 73 Mich. 276 (41 N. W. 488); *Johnson* v. *Schultz,* 74 Mich. 75 (41 N. W. 865); *Boydan* v. *Haberstumpf,* 129 Mich. 137 (88 N. W. 386); *Manzer* v. *Phillips,* 139 Mich. 61 (102 N. W. 292); *Montross* v. *Alexander,* 152 Mich. 513 (116 N. W. 190); *Pearson* v. *Schoenberg,* 167 Mich. 255 (132 N. W. 1011). A brief reference to these cases will aid us in determining just how far this court has gone upon the subject.

In *Larzelere* v. *Kirchgessner, supra,* there was apparently a studied attempt to introduce the subject of the children into the case. When the plaintiff was being examined in her own behalf she was asked the following question relating to her husband, "What family did he have?" to which question counsel for defendant objected as incompetent and irrelevant. The court ruled as follows:

"I will admit that for a qualified purpose so that it shall not be considered, under the present ruling, as affecting the question of damages, but for the purpose of showing the situation of this woman with reference to her own right."

The witness then answered:

"Four children; the oldest is 13, the next is 11, the next is 7, and the youngest is 4."

Counsel for defendant then moved to strike out the answer; the motion was overruled by the court and exceptions were duly taken. The court there ruled that in the statutory right of action by the wife where her recovery is confined to the injury to herself alone, and where the

children are given separate rights of action, that such testimony was irrelevant and immaterial.

That case was followed by *Johnson* v. *Schultz, supra,* in which case the plaintiff, when testifying in her own behalf, was permitted against objection to state how many children she had; the court stating that it admitted the testimony as bearing upon the question of punitory or exemplary damages. The jury in their verdict returned that they found actual damages in the plaintiff's favor of $100 and exemplary damages of $500. This court held that, under the authority of the case first above cited, the testimony should have been excluded.

In *Boydan* v. *Haberstumpf, supra,* the plaintiff, while a witness on the stand, was permitted to testify that she had a young child, some three years old, which child was in the courtroom at the time and remained during the trial, and counsel, in arguing to the jury, dwelt upon this fact. The court later on struck out this testimony and attempted to cure the error in its admission by its charge, but this court held that it was not satisfied that the error was without prejudice, and the case was reversed upon the authority of the case first above cited.

In *Manzer* v. *Phillips, supra,* the court admitted evidence that the plaintiff had two children. As to the action of the court the record is as follows:

"*Q.* Were your children present when the neighbors came in and were relating what had taken place—they were relating what had taken place?

"*A.* Yes, sir.

"*Mr. McCurdy:* I object to that as incompetent, inadmissible, and an improper method of getting in inadmissible testimony. I move to strike out the answer. The question itself is improper.

"*The Court:* I will strike out the answer if you want to strike out the answer. That is as far as I will go, if you want it stricken out.

"*Q.* They were not?

"*A.* Yes, they were. I said, 'Yes, sir.'

"*Mr. McCurdy:* I now renew my motion to have that

answer stricken from the record, and the jury instructed that they should pay no attention to it.

"*The Court:* I will deny the motion. (Defendant excepted.)

"*Q.* How did you feel at having that knowledge come home to you, under the circumstances there as you have related at your home?

"*Mr. McCurdy:* I object to it as incompetent and inadmissible.

"*The Court:* She may answer. (Exception for defendant.)

"*A.* Well, I felt pretty bad over it."

This court, in passing upon the subject, called attention to the fact that there was nothing in the record to indicate that the boys were present as witnesses, nor were they called as witnesses so far as the record disclosed. Later the plaintiff was further interrogated and answered as follows, referring to her husband's earnings:

"*Q.* You were speaking about his earning more money now than he did formerly. You may state whether or not you haven't boys that are grown up, and assist in earning this money at the present time?

"*Mr. McCurdy:* I object to it as incompetent, and an improper way of getting inadmissible evidence before the jury.

"*The Court:* I think, in view of the cross-examination, she may answer it. (Exception for defendant.)

"*A.* Yes, sir.

"*Q.* Are these the two boys that you speak of?

"*A.* Yes, sir."

Recross-examination by Mr. McCurdy:

"*Q.* These two young men are 18 or 19 years old, are they?

"*A.* No, sir.

"*Q.* How old are they?

"*A.* One 15; the other 17."

This court held that nothing was found in the cross-examination of the plaintiff to warrant the court's action, unless it was the answer drawn out that Mr. Manzer made a little more money ditching than when he first married,

and had more jobs owing to the clearing up of the country. It is pointed out, also, that no reference was made in the cross-examination to Mrs. Manzer's children, but the questions by defendant's counsel were confined entirely to her husband's earnings and business. This court held that it did not think such questions authorized the bringing in of the children, and that it was not competent to show an aggravation of the injuries of the plaintiff's feelings by showing the presence of her children when she was informed of her husband's misfortune. Reference is then made to the cases above cited, and the conduct of the court was held to be error; Justice BLAIR, who wrote the opinion, adding:

"We do not intend to intimate that the children could not have been called as witnesses to material facts in the case, or that there might not be cases in which the presence of the children would be part of the *res gestœ*, and so admissible, but we find nothing in this case to authorize the taking of this testimony."

In *Montross* v. *Alexander, supra*, the plaintiff was asked the following question, "How many children have you?" And she was allowed to answer "Six," and the case was reversed upon the authority of the foregoing cases.

This question was last before this court in *Pearson* v. *Schoenberg, supra.* Complaint was made in that case because the fact that plaintiff had a little daughter present in court with her was gotten before the jury by plaintiff's counsel. The husband of plaintiff was a witness in her behalf, and was interrogated by counsel as follows:

"*Q.* Who constituted your family at that time?
"*Mr. Clink:* I object to that as incompetent.
"*The Court:* What is the purpose of that?
"*Mr. Turner:* I don't know, if your honor please, as that would be.
"*The Court:* Outside of the wife. It already appears that he had a wife.
"*Mr. Anderson:* I think that is a competent question for this reason: If there were any children in that family

it shows—I think we have a right to show that; to show why it was necessary, in part, for her to dispose of these goods to support herself and small child.

"*The Court:* Before that is passed upon, I simply advise counsel to look at the case of Haberstumpf, decided about four years ago by our Supreme Court, which I think will satisfy counsel upon that question.

"*Mr. Anderson:* There is no question but what the child would have an action also. It would tend to show the damage it was to her; she having to support that child during that time."

There then followed an extended colloquy over this matter, which was indulged in by both court and counsel before the jury. The testimony was finally rejected, and the jury were instructed not to consider it. Later in the trial, plaintiff testified that during her husband's two months' spree she stayed alone with her little child night after night. This, also, was objected to and subsequently stricken out upon motion of defendant's counsel. The above cases were referred to by Justice BIRD, and it was held that if they were to be followed the case must be reversed. It is here apparent that there was again a studied attempt to get before the jury the fact that there was a child, for the purpose of enhancing damages; and, although the testimony was stricken out, we held that the harm which the rule seeks to prevent was accomplished.

Can the instant case be distinguished from this line of decisions? We think it can, and we are of opinion that this rule should not be extended beyond the previous holdings of this court. Here it was material and necessary for the plaintiff to show service of the written notice upon the defendant Grondin. It was perfectly competent and proper for her to show the manner in which the notice had been prepared and served. It was relevant and material for the plaintiff to fortify her own testimony upon the subject by showing who prepared the notice under her direction, and who, if anybody, was present when it was served. The presence of her 12-year old boy when the notice was served was a part of the *res gestæ* of the

service, and it was as competent for her to show that her boy witnessed that service as it would have been to show that anybody else was present.

We do not think there was error in showing her relationship to that witness. In view of the language of Justice BLAIR, above quoted, it certainly cannot be held to have been error to permit the little boy to testify as a witness relating both to the preparation of the notice and the service of it. For the purposes of identification, it was perfectly competent for him to state that he was the son of the plaintiff, and to state the circumstances surrounding the transaction. It was also competent for the little boy to testify to acts which he witnessed on the part of his father in pursuing his mother when the father was intoxicated, and we see no error in the charge of the court relating to the fact that, in the presence of the boy, the husband when intoxicated had called the plaintiff vile names. Unless we are to go to the length of holding that children of the plaintiff are not competent witnesses in such a case, we think that it must be held that there was no error in the instant case relating to this matter. We think the case can be readily distinguished from the former cases above referred to.

5. It is next claimed that the court erred in permitting testimony relating to defendant Grondin's conduct of his saloon on hours and days when he was prohibited by law from keeping it open. This refers to the opening statement of plaintiff's counsel that the plaintiff's husband was furnished liquor at the bar of the defendant, "not only during the hours which under the laws of the State of Michigan he was permitted to sell, but at any time and during prohibited hours." A reading of the record shows that the plaintiff, under the declaration, not only attempted to show the sale of liquors to plaintiff's husband after the service of the notice, but also at certain prohibited times, as well after the hours for closing as upon primary election day and the 22d of February.

It is further claimed that it was error to admit the fol-

lowing testimony of plaintiff. A portion only of this testimony is given in the assignment of error. We shall quote entire the plaintiff's testimony upon this subject. We quote as follows from plaintiff's testimony:

"The night before Mr. Grondin came up to my house in November, 1909, my husband was at his (Grondin's) place. It was a Saturday night that my husband was there and at about 12 o'clock I went up there, rapped at the side door, and the bartender came out through the kitchen door and I said to him, 'Is my husband here?' He says to me, 'No, ma'am.' I said, 'He must be in here, because everything else is locked up and I can hear playing cards and talking in there; he must be in there.' He says, 'No, ma'am.' He went in again with a lantern and came out through another back door. He says, 'Mrs. Johnson, you can come in and see if he is there.' I says, 'No, I don't want to go in there, but I am going to wait to see if he is in here.' I stood around and watched and finally Johnny Grondin got some liquor to carry in the back room.

"*Q.* What time was this?

"*A.* Between 12 and 1 o'clock.

"*Counsel for defendant:* I move to strike out the testimony as incompetent, irrelevant, and immaterial; we are not now trying criminal cases. I also wish to strike out all testimony with reference to this witness and Johnny Grondin near the kitchen door, or any other conversation—can have no reference to this defendant.

"*The Court:* The testimony may stand, objection overruled.

"*Defendants' counsel:* Both objections?

"*The Court:* Yes. (Exception noted for defendants.)"

The plaintiff continued to testify:

"I rapped the glass on the saloon window. I says, 'Here, you stop that business now; it is pretty near 1 o'clock; tell my husband, Mr. Johnson, to come.' So he dropped the bottles and went in the back room. A few minutes later my husband came out the side door. He had lots of bottles with beer in them in his hands and he was full. I followed him home and he put the bottles in front of the house, and went back again. I went in and a few minutes after he came home and took the bottles in.

He always swore and used bad language when he was drunk."

It is very apparent from this record that the plaintiff is here testifying to an occasion when, according to her testimony, her husband was in Grondin's saloon, and it shows that he came out of the saloon at this late hour of the night with bottles of beer in his hands and that he was in an intoxicated condition. In our view of the case, we think this testimony was competent.

In this same connection it is clamed there was error in the cross-examination of the witness Mike Ryan. This man was a witness in behalf of the defendants, and on direct examination testified that he was in Seney on the 22d of February, 1910, and September 6, 1910, which was primary election day, and that he could say that Grondin's saloon was closed on both of those dates; there having been testimony offered by the plaintiff tending to show sales of liquor to the plaintiff's husband on those dates. He was cross-examined at some length upon this subject and testified as follows:

"Mr. Grondin always closed his saloon up at 9 o'clock in the evening, as far as I know. I wouldn't know. I know that on Sundays, election day, and some holidays it is not open. I have never seen any one get liquor there on any day where by law he ought not to sell it."

Question by plaintiff's counsel:

"Never knew of any men to get liquor there on Sunday?
"A. No, sir."

This was objected to and permitted to stand for the reason, as stated by the court, that there had been testimony tending to show this defendant had sold liquor to plaintiff's husband on some of the prohibited days.

Under the same general head, a question asked the defendant Philip Grondin upon cross-examination was objected to by defendants' counsel. The defendant Grondin on his direct examination had testified that his saloon

was not open on Washington's Birthday, 1910, and that it was not open on September 6, 1910, primary election day, and that no liquor was furnished to plaintiff's husband by him or at his saloon on either of these days. On cross-examination he further testified:

"I remember the 6th of September, 1910, primary election day. I organized the board in the morning but did not sit on it. I went home and was around home the rest of the day. My bar was not open nor was the back room."

Then follows the question specifically objected to:

"You sold no liquor to anybody on that day?"

Objected to by defendants' counsel as incompetent, irrelevant and immaterial, whether he did or did not. The court held:

"It is possibly bearing upon the fact that liquor was sold to Johnson. I think it is competent."

To which counsel for defendants excepted. A similar question was put to the witness John Grondin by plaintiff's counsel on cross-examination. It was the following:

"Do you expose your barroom to the view of passers-by in the street during the hours that liquor is not sold there?"

We think, in view of the fact that the witness was here testifying relative to the time when the plaintiff claimed to have visited the saloon at night on the occasion when her husband was found there, the above was proper cross-examination. We are aware of the rule that proof of other illegal sales or violations not bearing on the issue may be prejudicial error. But that does not dispose of this question. This cross-examination was connected with this case, and, there having been evidence tending to show that the husband was furnished with liquors during prohibited hours, and the cross-examination having been directed to those instances, we think no error was com-

mitted in this connection. No evidence was offered here on the part of plaintiff to show unlawful sales to other persons on the days or times in question, and we think the ruling of the court finds support in *Hilliker* v. *Farr,* 149 Mich. 444 (112 N. W. 1116).

As all the questions on cross-examination except the last one were answered in the negative, the error, if any error was committed, which we do not think was the case, would have been harmless error.

We have examined the remaining assignments of error with great care and are unable to find that they are well assigned. A single remark of plaintiff's counsel when the court sustained an objection made by him was addressed to defendants' counsel:

"That is the way with most of your testimony."

While this was an unnecessary and improper remark by plaintiff's counsel, the attention of the court was not challenged to it by asking for any ruling, or by presenting any request to charge. We do not think that it was reversible error. We have examined the charge of the court very carefully in connection with the assignments of error relating thereto. We find no error therein.

It is claimed that there were no damages proven, or that the plaintiff suffered any mortification or mental anguish on account of her husband calling her vile names. There was testimony tending to show the use of such language addressed to the plaintiff by her husband when he was in an intoxicated condition, of repeated assaults upon her, and of other misconduct on his part. We think, as was said by this court in *Rice* v. *Rice,* 104 Mich. 371 (62 N. W. 833), that when damages of this nature are recoverable, the amount of damages lies in the sound discretion of the jury; that they are not capable of actual measurement, and that it is not necessary to introduce any evidence of value. When the jury have before them the circumstances surrounding the wrong done, they have the basis on which they may find a verdict.

Complaint is also made because there was evidence tending to show that the plaintiff's husband had been addicted to drinking before the time alleged in the declaration. We think that subject is fully covered in *Ford* v. *Cheever*, 105 Mich. 679 (63 N. W. 975), in which it was held, referring to a former case, that it was not intended by what was said in *Johnson* v. *Shultz*, *supra*, to imply that the wife was wholly without remedy for the wrong done in furnishing liquors to her husband which enabled him to continue the habit of drunkenness which he had already formed.

The court in its charge limited the recovery to sales made after November 1, 1909, by distinctly calling the attention of the jury to the matter at least twice in its charge. We have examined the defendants' requests to charge and are of opinion that the court in its general charge covered all the questions embraced in such requests which were proper to submit to the jury.

We find no reversible error in the record, and the judgment of the court below is affirmed.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.