### RAUHALA v. MAKI.

1. INTOXICATING LIQUORS—STATUTES—SURETY COMPANY—BONDS
   —PLEADING.

   Since the court takes judicial notice of the statute permitting
   defendant surety company to act as surety on a liquor
   dealer's bond, bonds executed thereunder were admissible in
   evidence in a civil-damage action in which the statute au-
   thorizing the action (2 Comp. Laws, § 5398, 2 How. Stat. 2d
   Ed. § 5074) was pleaded, and defendants pleaded the general
   issue, although the declaration did not allege that defendant
   corporation was duly qualified to act.

2. SAME—EVIDENCE—MEANS OF SUPPORT.

   Reversible error was not committed by permitting plaintiff to
   testify that because her husband failed to support her she
   was obliged to work to support herself and children, by doing
   washing and ironing away from home, and that she had re-
   ceived aid from the county.

3. SAME—WITNESSES—PRIVILEGE.

   Plaintiff having called one of defendant saloon keepers as a
   witness, was entitled to cross-examine him under the statute,
   Act No. 307, Pub. Acts 1909, in the absence of any claim of
   privilege on the part of the witness, whose testimony did not
   tend to incriminate himself.

4. SAME—MENTAL SUFFERING.

   The compensation to be awarded for the mortification and
   shame of the wife is particularly a matter for the jury, and,
   unless convinced that injustice is done, this court will not
   set aside the verdict.

5. SAME—DAMAGES.

   Five thousand four hundred dollars would not be held to be an
   excessive award of damages but for misconduct of plaintiff's
   attorney requiring a reversal.

6. SAME.

   Where plaintiff's attorney frequently referred to plaintiff's
   children during the progress of the trial and asked numerous
   questions with evident intent to get such fact before the
   jury, notwithstanding an adverse ruling of the trial judge,
   the error was prejudicial and reversible.

Error to Houghton; Streeter, J. Submitted June 21, 1912. (Docket No. 51.) Decided October 1, 1912.

Case by Gustava Rauhala against John Maki and others for illegal sales of intoxicating liquors to plaintiff's husband. Judgment for plaintiff. Defendants bring error. Reversed.

*Galbraith & McCormack, C. A. Marsch,* and *A. F. Bunting,* for appellants.

*Burritt & Burritt,* for appellee.

OSTRANDER, J. Setting out in her declaration that on May 1, 1908, her husband had the habit of drinking intoxicating liquors and of becoming intoxicated, plaintiff alleged that thereafter, during the years 1908, 1909, and 1910, certain of the defendants unlawfully and to her injury sold her husband liquor. After the testimony was concluded, she dismissed her action as to certain defendants, and it is not claimed that any unlawful sales were proven to have been made after April 30, 1910. Against the remaining defendants, the jury returned a verdict for $5,400, and judgment was entered on the verdict. A motion for a new trial was made, and was denied.

The contentions of appellants will be noticed in the order in which they appear in the brief.

1. An objection was made, on behalf of the defendant Michigan Bonding & Surety Company, to the introduction of any testimony, upon the grounds (*a*) that it was not alleged in the declaration that the company was qualified by law to execute the bonds of retail liquor dealers; (*b*) the declaration counts upon 2 Comp. Laws, § 5398 (2 How. Stat. 2d Ed. § 5074), and refers to no other statute, and that statute requires personal bondsmen for liquor dealers; (*c*) the declaration alleges sales of liquor by one Joel Matson during different years, in only one of which was the surety company his surety. These objec-

172 MICH.—8.

tions are stated in the brief, but are not argued beyond this, that it is said:

"The question simply is, Shall the plaintiff be allowed to count specifically on one statute and then introduce evidence under another?"

We do not perceive that the question stated is presented. Plaintiff produced and offered in evidence certain liquor dealers' bonds which appeared to have been executed by the said surety company. Judicial notice is taken of the statute which permits that company to become such a surety. The statute gives a right of action against the saloon keeper and his surety or sureties, and was pleaded. The surety company pleaded the general issue. See *Johnson* v. *Grondin*, 170 Mich. 447 (136 N. W. 423), where substantially the same objections were considered and overruled.

2. Errors are assigned upon rulings admitting testimony. Plaintiff claimed that her husband had after a time wholly failed to support her, and in consequence that she was obliged to work to support herself and children. She was asked what kind of work she did, and was permitted to answer, over the objection that the testimony was incompetent, irrelevant, and immaterial. She then stated that she did washing and ironing away from her home. She stated further, over like objection, that she received aid from the county.

The statute gives a right of action to a wife injured in person or property, or means of support, or otherwise, by reason of the selling, etc., of liquors, against any person who shall by such selling have caused or contributed to the injury. A wife, injured because her husband fails, in part or wholly, to support her, because of the liquor-drinking habit, has usually no need to re-enforce her testimony showing the support she would have received, and the loss of it, by detailing the manner in which she provided for herself, or was provided for by others. Whether she is obliged to support herself by work in an office, or in a

laundry, or is supported by the public, the injury for which she may recover is the same. She has lost, wholly or in part, her means of support formerly furnished by her husband. The trial judge said to counsel in the presence of the jury:

"I think, perhaps, Mr. Bunting's position is correct, with regard to what the members of the family, outside of Mrs. Rauhala, may have done; and I do not see how the question of where or in what manner she obtained her support can be material either, unless the defense will bring out that she had means of her own that she was using before. I think the sole question here is whether she was deprived of support that was furnished by her husband, and deprived of it through illegal sales of liquor, or means to which the illegal sales contributed."

This is a correct statement. We think, however, that reversible error was not committed in allowing her to prove that she was obliged to earn her living; and the character of the work she did, and, generally, the sources from which she derived what her husband failed to provide were some evidence of the fact.

One of the defendant saloon keepers was called as a witness by the plaintiff; her counsel stating that he was called and would be examined in accordance with the act permitting opposite parties to be called, and limiting the effect of the testimony they may give.[1] It was objected that the act is unconstitutional and void. It is said here that in this instance the examination invaded the constitutional immunity of the witness from giving testimony against himself. One answer to this is that it was not the objection made in the trial court. Another answer is that the witness at no time claimed his privilege. Still another answer is that he gave no testimony tending to incriminate himself. We find no merit in any of the assignments of error based upon rulings admitting testimony.

3. The very substantial verdict returned evidences the fact that plaintiff was awarded damages for some-

[1]Act No. 307, Pub. Acts 1909.

thing besides her loss of means of support. The nearest she came to stating a definite sum as the cost of her sup- port was that it was over $30 a month, without luxuries. Her husband was a drunkard at the beginning of the period, although giving attention to his business as a tailor. During a portion of the time, he supplied some- thing for his wife and family. She sold furniture and utensils from his shop and had the avails thereof. He left his home and family; and his whereabouts and conduct, and whether he has furnished anything to his family since this suit was begun, are facts not disclosed.

It is contended that the charge of the court and refusals to charge as requested, respecting the damages recover- able in this action, permitted the jury to employ improper rules in estimating the damages. The charge of the court is a fair and full presentation of the issues and of the ap- plicable law. It contains the substance of such requested instructions as should have been given. We find no error in it.

In denying the motion for a new trial, the court said:

"The amount of the verdict, considering the testimony, cannot be held excessive."

The compensation to be awarded in such cases for the mortification and shame of the wife is particularly a mat- ter for the jury; and, while the power of the court to pre- vent plain injustice is clear, it must be convinced that in- justice has been done before it will interfere. The testi- mony tends to prove that plaintiff notified the defendant saloon keepers not to sell liquor to her husband. Upon various occasions, she went to their saloons to get him and take him home. It appears that he was sent to jail, and while working there furnished some support to his wife. It is possible—indeed, it is probable—that the jury were impressed by facts referred to by counsel and here- inafter mentioned, and the impression may be reflected in the verdict. But for the errors of counsel we should not, however, reverse the judgment.

4. In his opening statement to the jury, the attorney for the plaintiff said he would prove that the plaintiff worked to support herself, and that her children worked. While he was interrogating the plaintiff as a witness, he inquired of her, "How many members were there of your family in 1908 and 9 and 10?" An objection was sustained, and thereafter the following occurred:

"I would like to state to the court the reason of the question. This action is brought to recover damages for loss, or partial loss at least, of the means of support of this plaintiff; and, as it will appear in evidence in this case that her husband made some contributions for the support of the family during a certain period of time, it seems to me that the number of the members of the family between whom that contribution made by him was to be divided, and for that purpose and that purpose only, and I make a disclaimer for all other purposes. That testimony would be admissible as bearing on the amount of the loss occasioned to this plaintiff.

"*Mr. Bunting:* I desire an exception to the statement of counsel and to his asking the question; it being an incompetent and immaterial matter to the jury.

"*The Court:* You may take an exception.

"*Mr. Burritt:* Your honor understands the purpose of the question?

"*The Court:* Yes.

"*Mr. Burritt:* Of course, that question is asked, your honor, in view of the legal rights of the defendants and every other person who might be interested.

"*Mr. Bunting:* The same exception, please.

"*Mr. Burritt:* Does your honor sustain the objection?

"*The Court:* I ruled before you made your remarks.

"*Mr. Burritt:* Give me an exception.

"*Q.* In 1908 and 1909 how much did it cost a month to support Rauhala's family?

"*Mr. Bunting:* I object to that as incompetent, irrelevant, and immaterial.

"*The Court:* Sustained."

The record discloses that later plaintiff's attorney again took up the subject of the family.

"*Q.* Now state, after your husband quit providing for

you in 1909, and before the 23d day of July, 1910, your children, or either of them, had to work, or did work?

"*Mr. Bunting:* I object to that as incompetent, irrelevant, and immaterial, and I take an exception to the repeated questions including family and children.

"*The Court:* I sustain the objection.

"*Mr. Burritt:* I presume, if your honor pleases, the defense will take exception, and I don't want to say anything here that would have a tendency to prejudice; but if a child is compelled to go out and work for the support or assistance in getting necessaries of life, is that humiliating?

"*Mr. Bunting:* I desire an exception to the use of that language.

"*Mr. Burritt:* It is for that purpose that I offer it.

"*The Court:* I think, under the decisions in this State, the ruling was the only one I am permitted to make, Mr. Burritt.

"*Mr. Burritt:* May I take an exception to the ruling of the court?

"*The Court:* Certainly."

Again the subject was introduced:

"*Q.* Did you talk to either of those men?

"*A.* I did talk, and I was a little angry, and I told them not to give any liquor to my husband. When I talked to him, he asked me if I was Matt Rauhala's wife, and I said 'Yes,' and he said he didn't know Matt Rauhala had a wife, and I said: 'Yes; you know it now. He has a wife and six children.'

"*Mr. Galbraith:* I move that that be stricken out. The answer is incompetent, irrelevant, and not responsive to the question.

"*The Court:* I think the latter part may be stricken out. * * * So you only saw your husband in Matson's place three times?

"*A.* Yes; but my son saw him going in there several times, and I saw myself.

"*Mr. Galbraith:* I would like to have that stricken out.

"*The Court:* It may be stricken out."

In denying the motion for a new trial, the court said upon the subject:

"The fact that the plaintiff had children being brought to the attention of the jury was error. A number of cases in this State hold that the admission of testimony to establish that fact is reversible error. In this case the testimony offered on the part of the plaintiff bearing upon this question was not admitted. I am satisfied that the presence of one of the children in the courtroom during part of the trial was not occasioned by the attorneys for the plaintiff; and his presence was not made prominent nor noticeable, except by the statement of the plaintiff in an answer to a question on cross-examination. The plaintiff did not understand English, and her mention of her son was evidently an endeavor to designate a person having the information called for by the examiner, and not a desire to show that she had children. Taking into consideration the character and capacity of the men who composed the jury, the fact that two of the jurors were from the same place where plaintiff and her husband had lived during all of their married life, the testimony given by two of the defendants themselves and that given by their barkeepers, and taking into account the amount of the verdict, I am satisfied that in this particular case the error had no influence whatever upon the jury, and was not prejudicial to the defendants, or either of them."

Appellants insist that upon this point reversible error is made out. In *Johnson* v. *Grondin, supra,* a recent case, this court took occasion to review at some length applicable decisions of the court. The statute gives a separate right of action to the wife and to the children, and to preserve the rights of each; and, that no injustice might result to any one, this court has repeatedly held that the action of the wife must proceed upon the theory that for only her own injuries can she be awarded damages. So far as judicial admonition and decision can be useful in this direction, the attorney for plaintiff was advised. Uncalled-for replies of his client, made without instruction and in ignorance of their import, might be excused. But his persistence in recurring to the subject of the children, his suggestions, in the presence of the jury, calculated to enhance the damages, because there were children, and because they, too, were affected by the habits

of their father, cannot be excused, unless a rule heretofore adhered to is to be abrogated, because persistently disobeyed.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and STEERE, McALVAY, BROOKE, STONE, and BIRD, JJ., concurred.