EMMA FORD v. JACOB CHEEVER

*Liquor traffic—Sales to husband—Liability of saloon keeper—Evidence—Damages—Commission to take testimony.*

1. It was not intended by what was said in *Johnson v. Schultz,* 74 Mich. 75, to imply that the wife is wholly without remedy for the wrong done her by furnishing liquors to her husband, which enabled him to continue the habit of habitual drunkenness, which he had already formed.

2. In a suit brought by a wife against a saloon keeper for injury to her means of support and feelings by reason of the sale of liquors to her husband, the evidence showed that the husband had been addicted to drink prior to the time the defendant engaged in the saloon business, and it was not claimed that the defendant was in any way responsible for the drunkenness of the husband prior to that time. Requests on the part of the defendant to charge the jury that if, at the time defendant first sold plaintiff's husband liquor, he was a confirmed drunkard, the defendant would not be liable for causing or contributing to such condition, but would be only liable for such damages as plaintiff sustained, so far as actual damages were concerned, by reason of selling to him in that condition, and that, if the jury should find that at the time defendant first sold the husband liquor he was a confirmed drunkard, they could assess damages only for selling to such a man, and not to a sober and industrious man, were refused, and the court instructed the jury that the defendant was not responsible for damages or injury which plaintiff might have suffered by reason of sales of liquor to her husband before defendant went into the business, but if, after that time, he sold him liquor from which plaintiff suffered injury, even though the husband might have been, at the time when such sales commenced, a man who had suffered much from drink, or plaintiff had suffered much by reason of the fact that her husband had been a hard drinker, still that would not relieve the defendant from responsibility for such damages as plaintiff might have suffered by reason of defendant's action. And it is held that the jury could not have misapprehended the proper limit of the inquiry, in view of these instructions.

3. Plaintiff's attorney, in his opening statement to the jury, stated that plaintiff's husband lived in another city a little over a year, and on his return to his former home, where the suit was brought, defendant again threw around him those injurious influences, and violated the law by selling liquor to him. And it is held that this was a general statement of what the plaintiff proposed to show, and was not open to exception.

4. Plaintiff was permitted to testify, against defendant's objection, that her husband was, at the time of the trial, dead, to state the date of his death, and to introduce in evidence How. Stat. § 4245, containing the mortality tables. Counsel for plaintiff, on the cross-examination of one of defendant's witnesses, was permitted, against objection, to ask if the witness had not heard that plaintiff's husband committed suicide after a long debauch, to which question the witness answered that he had heard that the husband was found dead in his room, but did not know whether or not he was drunk, but, in answer to another question, he stated that he had heard that the husband was accused of being drunk. And it is held that the error in receiving the testimony relative to the death of the husband and his life expectancy was not cured by an instruction that the testimony as to the cause and circumstances of the husband's death was stricken from the case, because hearsay testimony, and that there could be no recovery by reason of any injury which plaintiff might have suffered by reason of his death, whatever the circumstances might have been.

5. The jury should be cautioned that the added damages in such a case should be such damages as will compensate the plaintiff for injury to her feelings occasioned by the wrong of the defendant.

6. While it may not be error to refer to exemplary damages as such, yet it has never been the policy of the court to permit juries to award captiously any sum which may appear just to them, by way of punishment to the offender, but rather to award a sum in addition to the actual proven damages, as what, in their judgment, constitutes a just measure of compensation for injured feelings, in view of the circumstances of each particular case; citing *Scripps v. Reilly*, 38 Mich. 10.

7. An objection that the return of a commissioner to a deposition does not show that the oath was publicly administered, as required by How. Stat. § 7439, is not tenable where it appears from the return that the testimony was taken at

the office of the commissioner, after the taking by the witness of the oath prescribed by the instructions annexed to the commission, which required an oath to be publicly administered.

Error to Lenawee. (Lane, J.) Argued April 30 and May 1, 1895. Decided July 2, 1895.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Walter C. Burridge* and *Watts, Bean & Smith*, for appellant.

*Jacob C. Winne*, for plaintiff.

MONTGOMERY, J. This is an action brought under the civil damage law against defendant, who was during the years 1888, 1889, 1890, 1891, and 1892 engaged in keeping a saloon in the village of Tecumseh. The plaintiff sued to recover damages for injury sustained in her means of support and injury to feelings. She recovered a verdict of $1,500, upon which judgment was entered; and the defendant brings error, alleging a large number of errors committed on the trial.

1. The evidence showed that the plaintiff's husband had been addicted to drink prior to 1888, when the defendant engaged in the saloon business, and there was no evidence to show, nor was it claimed, that the defendant was in any way responsible for his drunkenness prior to that time. The defendant asked the court to charge the jury as follows:

"If the plaintiff's husband, at the time the defendant first sold him liquor (if he ever did sell him any), was a confirmed drunkard, in that case the defendant would not be liable for causing or contributing to such condition, but would only be liable for such damages as the plaintiff sustained, so far as actual damages are concerned, by reason of selling to him in that condition."

And, in another request, as follows:

"If you come to the question of damages, then, in considering that question, you must take the husband of plaintiff just as you find him by the testimony at the time the defendant first sold him liquor (if he ever did sell to him), and must consider that question in the light of his then condition; and, if you find him at that time a confirmed drunkard, then you can assess damages only for selling to such a man, and not to a sober and industrious man. Defendant would not be liable as for making him a drunkard."

It was held in *Johnson v. Schultz*, 74 Mich. 75, that it was error to permit the jury to award damages for the loss of the companionship of the husband as a sober man, when it appeared that he had become an habitual drunkard before the occasion upon which the sales were charged to have been made by the defendant. In that case, however, the rights of the defendant were in no way guarded by an instruction which distinguished between sales made prior to the dates charged in the declaration and subsequently. But, in the present case, the judge charged the jury upon the subject as follows:

"It would be true, gentleman, that this defendant could not be held responsible for damages or injury which she may have suffered by reason of the sales of intoxicating liquor to her husband at a time before he had anything to do with it,—that is, I mean, prior to the year 1888, when Mr. Cheever went into the business; but if he did sell liquor after that time, from which the plaintiff suffered injury, even though he may have been, at the time when he began the sale of liquor to him, a man who had suffered much from drink, or she may have suffered much by reason of the fact that he had been a hard drinker, still that would not relieve the defendant from responsibility for such damages as she may have suffered by reason of his action, under the instructions I have given you."

In another portion of the charge the court said:

"Of course, the plaintiff cannot recover for any injury to which the defendant did not contribute by the sale of intoxicating liquors which he did not either sell or contribute to."

We do not think the jury could have misapprehended the proper limit of the inquiry in view of these instructions. They were plainly told that for any injury prior to 1888, when the sales by defendant were alleged to have commenced, the plaintiff could not recover, and that she could not recover for any injury to which sales by defendant did not contribute. We apprehend it was not intended by what was said in *Johnson v. Schultz* to imply that the wife is wholly without remedy for the wrong done her by furnishing liquors to her husband, which enabled him to *continue* the habit of habitual drunkenness. This would imply that the saloonist might with impunity furnish liquor to an habitual drunkard when he could not to a sober man.

2. Plaintiff's counsel, in his opening statement to the jury, stated that plaintiff's husband lived in Bay City a little over a year, and, on his return from Bay City to Tecumseh, defendant again threw around him those injurious influences, and violated the law by selling liquor to him. This was objected to as incompetent, and an exception taken. This was a general statement of what the plaintiff proposed to show, and, we think, not open to exception.

3. Objection was made to the introduction of the testimony of one Orrin T. Lane, taken by deposition, but we think the objection is without force. It is contended that the return of the commissioner does not show that the oath was publicly administered, as required by section 7439, How. Stat.; but the return does make it appear that the testimony was taken at the office of the commissioner, and after having taken the oath prescribed by the instructions annexed to the commission. The instructions annexed to the commission require an oath publicly administered, and we think the return sufficient.

4. The plaintiff was permitted to testify against defendant's objection that her husband was, at the time of the trial, dead, and that he died in March, 1893, and was also permitted to introduce in evidence How. Stat.

§ 4245, containing the mortality tables. We can conceive of but one purpose for which this testimony was offered, which must have been with a view of charging the defendant in some way with the responsibility for the death of plaintiff's husband. Upon no other issue in the case is it conceivable that the mortality tables could have had anything to do with any question involved. The circuit judge, however, in his instructions to the jury, stated that—

"The testimony as to the cause of the death of the husband, and the circumstances of his death, is stricken from the case, because it was hearsay testimony entirely, and there can be no recovery here upon the part of the plaintiff by reason of any injury which she may have suffered by reason of his death, whatever the circumstances of it might have been. This action was brought before the death, and there is no claim for any such damages, and consequently they cannot be recovered."

We are not able to say that this ruling cured the error. Plaintiff's counsel, on the cross-examination of one of defendant's witnesses, was permitted to ask this question: "Is it not true that you heard that he [referring to plaintiff's husband] committed suicide in Jackson, after a long debauch?"—which was objected to, and the objection overruled by the court. The witness replied: "I heard that he was found dead in the room. I do not know whether he was drunk or not." *Question*: "Did you not hear that it was the result of a long drunken debauch? Now, is that not what you heard?"—which was likewise objected to, and under exception he was permitted to say: "Why, yes, sir; kind of accused of being drunk." When this testimony was received, it must have been considered by the jury as having some relevancy to the case; and we cannot say, particularly in view of the fact that the verdict was large when considered in connection with the proof of positive damages, that its admission did not prejudice the jury, or was cured by the instructions given by the circuit judge.

As the case must go back for a new trial, we think it

proper to say that in 'defining exemplary damages to the jury, while the circuit judge was probably within the law, inasmuch as no further instructions upon that subject were asked, yet we deem it better for the court to caution the jury that the added damages in a case of this character should be such damages as will compensate the plaintiff for injury to her feelings occasioned by the wrong of the defendant. While it may not be error to refer to exemplary damages as such, yet it has never been the policy of the Court to permit juries to award captiously any sum which may appear just to them, by way of punishment to the offender, but rather to award a sum in addition to the actual proven damages, as what, in their judgment, constitutes a just measure of compensation for injury to feelings, in veiw of the circumstances of each particular case. *Scripps v. Reilly*, 38 Mich. 10.

For the error in admitting the testimony relative to the death of the husband and his expectation of life, the judgment will be reversed, and a new trial ordered.

McGRATH, C. J., LONG and GRANT, JJ., concurred. HOOKER, J., did not sit.