Roland YOUNG

v.

VERSON ALLSTEEL PRESS CO.

and

Federal Pacific Electric Co.

Civ. A. No. 79–2817.

United States District Court,
E. D. Pennsylvania.

April 16, 1982.

Joseph Lurie, Richard Shapiro, Galfand, Berger, Senesky, Lurie & March, Philadelphia, Pa., for plaintiff.

Lawrence T. Hoyle, Jr., Carole E. Handler, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Verson Allsteel Press Co.

William G. Adamson, Harvey, Pennington, Herting & Renneisen, Bruce Lombardo, Trial Counsel, Philadelphia, Pa., for Federal Pac. Elec. Co.

MEMORANDUM

JOHN MORGAN DAVIS, Senior District Judge.

In this diversity action, the question before the court is whether defendant, Federal Pacific Electric Company (Federal) may introduce evidence of plaintiff Young's settlement with former co-defendant Verson Allsteel Press (Verson) at trial. Here, unlike the typical case, plaintiff is not offering evidence of defendant's settlement with a third party to establish defendant's liability. See e.g. *Sun Oil v. Govostes*, 474 F.2d 1048, 1049 (2d Cir. 1973). Instead, *defendant* (Federal) seeks to introduce evidence of plaintiff's settlement with Verson to minimize its potential exposure in damages.[1] Implicit in Federal's position must be the belief that a jury will be less likely to render a large damage award if they are aware that plaintiff has already been compensated by a former co-defendant, viz. Verson.

The resolution of this question, is governed by the application of Rule 408 of the Federal Rules of Evidence.[2] This rule provides that:

(1) furnishing or offering or promising to furnish,

or

(2) accepting or offering or promising to accept, a valuable consideration in com-

---

1. As the Advisory Committee's note to Rule 408 makes clear, although the configuration in which this situation arises is not usual, it is nevertheless governed by application of Rule 408.

   "While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto. *This latter situation will not, of course, ordinarily occur except when a party to the present litigation has compromised with a third person.*"

   Fed.R.Evid. 408, Advisory Committee note (emphasis supplied).

2. An interesting *Erie* problem arises in diversity cases which, depending on the theoretical basis for Rule 408, may dictate the application of contrary state rules of decision. See gen., Note, Rule 408 and *Erie: The Latent Conflict*, 12 Ga.L.Rev. 275 (1978). This problem is ren-

dered largely academic in the instant case by 42 Pa.Con.Stat.Ann. § 6141(c) which provides:

   Except in an action in which final settlement and release has been pleaded as a complete defense, any settlement or payment referred to in subsections (a) [Personal injury suits] and (b) shall not be admissible in evidence on the trial of any matter.

See also, *Fisher v. Life Assn.*, 188 Pa. 1, 41 A. 467 (1898); *Commonwealth v. Terry*, 275 Pa. Super. 184, 418 A.2d 673 (1980). Although the Comparative Negligence Act, 42 Pa.Con.Stat. Ann. § 7102, is silent regarding the admissibility of evidence of settlement, it is significant that § 6141(c) was enacted along with the Comparative Negligence law on July 9, 1976 in P.L. 586, No. 142. This signals that the provisions of P.L. 586 should be construed in *pari materia*. 1 Pa.Con.Stat.Ann. § 1932. Thus, the state rule prohibiting introduction of the fact of settlement in joint tortfeasor cases is substantially in accord with federal policy.

promising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or validity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations are likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. [This rule also does not require exclusion when the evidence is offered for another purpose] such as proving bias or prejudice of a witness, negotiating a contention of undue delay or proving an effort to obstruct a criminal investigation or prosecution.

Fed.R.Evid. 408. (brackets added).

Defendant argues that because it is forced to attend trial without the presence of former co-defendant Verson Allsteel Press (Verson)[3] it should be permitted to introduce evidence of Verson's settlement with plaintiff Young. Defendant contends that evidence of Verson's settlement with Young would alleviate an "unnecessary and substantial" prejudice which would result if, "the jury were kept in the dark about the settlement and misled into thinking that Federal was the only possible source of funds to compensate plaintiff for his injuries." Supplemental brief of defendant at 3 and 4. In support of its position defendant relies on that portion of Rule 408 which

authorizes the admission of settlement information when offered for a purpose other than "to prove liability for or invalidity of the claim *or its amount.*"[4] Presumably the "other purpose", here averred, is to prevent unnecessary and substantial prejudice from accruing to defendant.

■ Taking Federal at its word; i.e., that it wishes to prevent the jury from believing that Federal would be the only source of a plaintiff's recovery, it is still not possible to see how this is not precisely the forbidden fruit excluded by operation of Rule 408. It is difficult to understand how Federal is not, by its own admission, seeking to introduce such evidence to mitigate the *amount* of any possible jury award by informing the jurors that plaintiff has already received a measure of compensation for his injuries. Thus, upon more circumspect analysis it is clear that Federal's argument is merely an attempt to circumvent the express prohibition of Rule 408.[5] Whether or not Federal would dispute this characterization is irrelevant; for there are additional considerations which support the denial of Federal's motion.

■ Federal has argued that because its express purpose for introducing evidence of settlement is not to prove the validity or invalidity of the claim or its amount, such evidence of settlement should be deemed

3. See *Young v. Verson Allsteel Press Co.,* 524 F.Supp. 1147 (E.D.Pa.1981) (holding that the Pennsylvania Comparative Negligence Act did not require a settling co-defendant to be present at trial where the terms of the release conceded tortfeasor status and provided for reduction in any judgment obtained by the plaintiff in the amount the settling defendant's pro rata share).

4. See Supra, Fed.R.Evid. 408. (emphasis added).

5. "Rule 408 [limits] exclusionary treatment to offers of evidence for the purpose of showing liability or amount of damages . . .". J. Weinstein & M. Berger, Weinstein's Evidence, § 408[04] (1978). And as further explained by Professor Louisell:

When a party has potential liability to more than one claimant, or when a single claimant claims relief from more than one defendant,

settlement negotiations are commonly carried out on several fronts. An exclusionary rule which reached only the compromise negotiations between the very parties who subsequently litigate the underlying claim would fall far short of providing the needed protection to the settlement process, and would in fact leave unprotected the very situation which poses the greatest needs. The very terms of Rule 408 leave no doubt that it reaches these cases, and that under it a defendant cannot prove the invalidity or amount of a plaintiff's claim by proof of plaintiff's settlement with a third person, nor can plaintiff show the defendant's liability or extent of liability, by proof of defendant's settlement with a third person.

2 D. Louisell & B. Mueller, Federal Evidence § 171 at 289 (1978).

admissible.[6] This claim, even if true, would not signal an end to our inquiry because as Judge Weinstein has trenchantly observed:

> Despite such a sweeping statement, care should be taken that an indiscriminate and mechanistic application of this "exception" to Rule 408, does not result in undermining the rule's public policy objective ... The trial judge should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations.

2 J. Weinstein & M. Berger, Weinstein's Evidence, § 408[05] (1978).

■ Even if Rule 408 did not explicitly address the issue, my concern about the prejudice to plaintiff and the "unsettling" effect upon future compromise agreements between parties leads me to conclude, Federal's motion should be denied.

> It is well established that statements made for purposes of settlement negotiations are inadmissible. *And Rule 408 of the Federal Rules of Evidence extends the exclusion to completed compromises when offered against the compromiser*

Playboy Enterprises, Inc. v. Chuckleberry Pub., 486 F.Supp. 414, 423 at n. 10 (S.D.N.Y. 1980) (emphasis added). The policy underlying Rule 408—encouraging settlements—applies with equal force in the instant case. See *Reichenbach v. Smith*, 528 F.2d 1072, 1074 (5th Cir. 1976); *Triangle Industries, Inc. v. Kennecott Copper Corp.*, 402 F.Supp. 210, 211–12 (S.D.N.Y.1975)[7].

Notwithstanding the powerful federal interest implicated by the non-disclosure policy set by Rule 408, it must be noted that this position has been adopted by numerous state courts as a matter of state substantive law. In construing the Uniform Contribution Among Tort-feasors Act[8] state courts have charted various courses in the area, ranging from, complete disclosure of the fact of settlement with a joint tortfeasor and the amount, to prohibition of any disclosure of such facts. See *Sharp v. Hall*, 482 F.Supp. 1, 2 (E.D.Okla.1978), Annot., 94 A.L.R.2d 352 (1964). With the advent of the doctrine comparative negligence, however, the recent trend among the states in interpreting their respective interrelated comparative negligence and joint tortfeasor contribution statutes is to place any evidence of a plaintiff's settlement with a joint tortfeasor beyond the jury's grasp. See *Brewer v. Payless Stations Inc.*, 412 Mich. 673, 316 N.W.2d 702 (1982); *Slayton v. Ford Motor Co.*, 435 A.2d 946, 947 (Vt. 1981); *Kueppers v. Chrysler Corp.*, 108 Mich.App. 192, 310 N.W.2d 327, 331 (1981); *Silisky v. Midland-Ross Corp.*, 97 Mich.App. 470, 296 N.W.2d 576, 580, 581–82 (1980); *Yardley v. Rucker Bros. Trucking Co.*, 42 Or.App. 239, 600 P.2d 485, 488 (1979); *Pease v. Beech Aircraft Corp.*, 38 Cal.App.3rd 450, 113 Cal.Rptr. 416, 431 (1974); *Luth v. Rogers & Babler Const. Co.*, 507 P.2d 761 (Alaska 1973); *Orr v. Coleman*, 455 S.W.2d 59 (Ky.1970).[9] But cf., *Seals v. Hickey*, 186 Conn. 337, 441 A.2d 604 (1982) (state statute as construed violates state constitution); *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978) (discretionary ruling). This exclusionary rule has been predicated upon either

---

**6.** Federal has not claimed that it may have evidence of Young's settlement admitted pursuant to any of the explicitly recognized exceptions to Rule 408. These exceptions permit introduction of settlement evidence to prove, bias or prejudice of a witness, undue delay or effort to obstruct a criminal investigation or prosecution. See e.g., *McShain v. Cessna Aircraft Co.*, 563 F.2d 632, 635 (3rd Cir. 1977) (Evidence of release admitted to demonstrate bias of witness). I do not rule out the possibility that evidence of settlement may become relevant on any of these grounds during trial, but find that such evidence is inadmissible based solely on the defendant's amorphous claim of prejudice on the record before the court.

**7.** See also, *Scaramuzzo v. Glenmore Distilleries Co.*, 501 F.Supp. 727, 753 (N.D.Ill.1980) citing *Hawthorne v. Eckerson Co.*, 77 F.2d 844, 847 (2d Cir. 1935) ("Settlements have always been looked on with favor, and courts have deemed it against public policy to subject a person who has compromised a claim to the hazard of having settlement proved in a subsequent lawsuit by another person asserting a cause of action arising out of the same transaction").

**8.** The current Pennsylvania version is found at 42 Pa.Con.Stat.Ann. §§ 8321–8327 (1979).

**9.** See also, *Brooks v. Daley*, 242 Md. 185, 218 A.2d 184, 188 (1964); *De Lude v. Rimek*, 351 Ill.App. 466, 115 N.E.2d 561, 565 (1953).

public policy grounds [10] or an irrelevancy theory.[11]

■ In an attempt to resolve the complexities of multiple tortfeasor situations, Pennsylvania has developed a comprehensive statutory scheme. Preliminarily, as our circuit court recently observed, the new Comparative Negligence Act [12] impliedly amends the Uniform Contribution Among Tort-feasors Act [13] so that the measure of contribution is to be determined on a comparative fault basis in proportion to the percentage of negligence attributable to each defendant. *Slaughter v. Pennsylvania X-Ray Corp.*, 638 F.2d 639, 644 (3rd Cir. 1981).[14] As heretofore explained,[15] in conjunction with the enactment of the comparative negligence law, the legislature contemporaneously sought to prohibit any introduction at trial of evidence of settlement with a joint tortfeasor.[16] Thus, the theory of comparative contribution among tortfeasors which is envisioned by the compara-

tive negligence law [17] together with an express legislative determination to exclude evidence of settlement signals a unified legislative approach in this area of law. This view of the statutory interrelationship compels the conclusion that the legislature intended to adopt the so-called "court-rule" in defining the functions of the court and jury. Under this rule, the jury finds the total amount of damages and the degree of comparative fault among the parties, without knowledge of the fact of settlement. The court then apportions the damage award among the remaining defendants according to each party's percentage of causal negligence. So long as the jury determines the percentage of causal negligence attributable to the settled defendants pursuant to § 7102(b) and the appropriate *pro rata* reduction is made by the court pursuant to § 8326, evidence of settlement is superfluous. Its sole use is to obtain possible tactical advantage at trial. For this reason, as

10. As summarized by Judge Underwood:

If the jury is informed of either the fact or the amount of a settlement, there is a danger that it will draw improper inferences. A jury might conclude that the settling defendant was the party primarily responsible for the injury, and that the remaining defendants should therefore be exonerated. It might take the amount of the settlement as a measure of the plaintiff's damages. It might consider one defendant's settlement to be an admission of negligence, and then impute this negligence to a nonsettling defendant.

*Slayton v. Ford Motor Co.*, supra, 435 A.2d at 947 (citations omitted). The court also posited that disclosure of settlement would also frustrate policies encouraging extra-judicial settlements. Id. at 948 (citing *Luth v. Rogers, & Babler Const. Co.*, supra, 507 P.2d at 768).

11. The court in *Kueppers v. Chrysler Corp.*, supra, reasoned that since it was agreed that the trial court would deduct the amount of settlement from any judgment to preclude the possibility of any double recovery, the fact and amount of settlement was not relevant to any issue in the case. 108 Mich.App. at 195, 310 N.W.2d at 330. See also, *Pease v. Beech Aircraft Corp.*, supra, 38 Cal.App.3rd at 473 n.5, 113 Cal.Rpts. at 431 n.5. This rationale is not persuasive in light of the minimal federal standard for relevance. See Fed.R.Evid. 401. Evidence of settlement is inferentially related to the amount of damages and liability issue. Thus, it would appear that the better reasoned thesis for exclusion rests on policy grounds.

The *Kueppers'* court implicitly recognized this problem in its acknowledgment of the applicability of the state rule of evidence, which is nearly identical to Rule 408, as an additional reason for exclusion. *Kueppers v. Chrysler Corp.*, supra, 108 Mich.App. at 197, 310 N.W.2d at 331.

12. 42 Pa.Con.Stat.Ann. § 7102 (1979).

13. See, supra, at n.8.

14. See also, *Gomes v. Brodhurst*, 394 F.2d 465, 468–69 (3rd Cir. 1968) (Law of Virgin Islands); *Conkright v. Ballantyne of Omaha, Inc.*, 496 F.Supp. 147, 152–53 (W.D.Mich.1980) (Michigan law).

15. See, supra, at n.2.

16. See 42 Pa.Con.Stat.Ann. § 6141(c). This is not a case in which settlement is pleaded as a complete defense within the meaning of the statute.

17. See, supra, at n.14 and accompanying text. Of course, this interpretation necessitates that a settling tortfeasor's percentage of causal negligence be determined by the jury so that the nonsettling tortfeasors can be properly credited with the settlement. See Griffith, Hemsley and Burr, *Contribution, Indemnity, Settlements and Releases*: What the Pennsylvania Comparative Negligence *Statute Did Not Say*, 24 Vill.L.Rev. 494, 511 (1979).

well as the attendant anti-settlement consequences, it can be surmised that the legislature chose to exclude such marginal evidence when it enacted § 6141(c).

In sum, under these circumstances it is apparent that admission of evidence of settlement conflicts with both the comprehensive state comparative negligence—joint tortfeasor statutory scheme, and the policy underlying Fed.R.Evid. 408.

It should not be inferred from this conclusion that I am unmindful of the potential for prejudice about which Federal complains. Rather, it is simply that I am more sanguine about Federal's ability to vitiate any possible prejudice by introduction of evidence concerning Verson's liability.[18] I cannot countenance admission of settlement evidence solely to apprise the jury of that fact.[19] This is precisely the situation which Rule 408 expressly forbids. Moreover, a decision which permits Federal to use evidence of plaintiff Young's settlement *against* Young at trial, would certainly give pause to future plaintiffs when they are presented with settlement offers from only one of several defendants.

### ORDER

AND NOW, this 16th day of April 1982, for the reasons stated in the attached memorandum, it is hereby ORDERED that:

Defendant, Federal's motion to admit evidence of Verson's settlement with plaintiff Young, is DENIED.

### APPENDIX

### THIS IS A FULL AND COMPLETE RELEASE JOINT TORTFEASOR READ IT CAREFULLY

KNOW ALL MEN BY THESE PRESENTS that I, ROLAND YOUNG, in-

dividually for and in consideration of the payment of Fifty Thousand ($50,000.00) Dollars, the receipt and sufficiency of which is hereby acknowledged, and by this Release do, for myself and my heirs, executors and assigns, hereby remise, release, and forever discharge VERSON ALLSTEEL PRESS COMPANY and its present, former, and subsequent officers, directors, attorneys, agents, representatives, and employees from any and all claims, demands, liabilities, actions, causes of action, or suits of any kind or nature whatsoever, including but not limited to claims for contribution or indemnity, and particularly on account of all damages and injuries, known or unknown, which have resulted from an accident that occurred on June 28, 1978, at Eastern Machine Products, Inc., Reading, Pennsylvania, including but not limited to any and all claims which I have made or could have made in the suit now pending in the United States District Court for the Eastern District of Pennsylvania entitled *Roland Young v. Verson Allsteel Press Company and Federal Pacific Electric Company*, Civil Action No. 79–2817.

It is understood and agreed that I, ROLAND YOUNG, shall file a motion to dismiss VERSON ALLSTEEL PRESS COMPANY with prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure. However, in the event that any present or future defendant or third-party defendant claims against VERSON ALLSTEEL PRESS COMPANY in this action or a separate action for contribution or indemnity, or if for any reason VERSON ALLSTEEL PRESS COMPANY is not dismissed from this action, it is further agreed by me that any judgment entered against other alleged tortfeasors shall be reduced by an amount

---

18. As this court has previously stated: "Nothing prevents Federal from introducing whatever probative evidence of Verson's culpability it may otherwise have offered with Verson present at trial". *Young v. Verson Allsteel Press Co.*, supra, 524 F.Supp. at 1152. Surely, the mettle of the adversary system will not be tested when called upon to ascertain the relative degrees of fault among these parties.

19. The settlement agreement achieved in the instant case is *not* of the so-called "Mary Carter" variety whereby under secret agreement the agreeing defendant remains in the case but the settlement figure fluctuates with degree of liability of the non-settling party. Under these circumstances, because of the possibility of collusion, the agreement generally must be disclosed to the jury. See gen., *General Motors Corp. v. Lahocki*, 286 Md. 714, 410 A.2d 1039 (1980) (citing numerous law review articles).

equal to the amount of consideration paid for the Release, or the pro rata share of the party released herein, VERSON ALLSTEEL PRESS COMPANY, or in the event that the doctrine of comparative negligence is held to be applicable, in the amount of the relative fault, if any, attributed by the Court or jury to VERSON ALLSTEEL PRESS COMPANY, whichever is greater.

In order to avoid inconvenience and expense to the released party, VERSON ALLSTEEL PRESS COMPANY, in any action in which the said VERSON ALLSTEEL PRESS COMPANY is or may be a defendant or third party defendant together with other alleged tortfeasors, it is further agreed by us that any verdict rendered against the other alleged tortfeasors shall be reduced by the pro rata share of the party released herein, VERSON ALLSTEEL PRESS COMPANY, or in the event that the doctrine of comparative negligence is held to be applicable, in the amount of the relative fault, if any, attributed by the Court or jury to VERSON ALLSTEEL PRESS COMPANY, whichever is greater, and any judgment entered on said verdict shall be in the amount of the verdict reduced by the pro rata share of the party released herein, or in the event that the doctrine of comparative negligence is held to be applicable, in the amount of the relative fault, if any, attributed by the Court or jury to VERSON ALLSTEEL PRESS COMPANY, whichever is greater whether or not the released party herein was in fact a joint tortfeasor. This provision is intended to obviate the necessity and expense of having the released party herein remain a party on the record and obliged to participate at its expense in a trial merely for the purpose of determining if in fact it was a tortfeasor so as to entitle the other tortfeasors to a reduction of any verdict. However, this provision in no way constitutes an admission of liability by the party released herein, VERSON ALLSTEEL PRESS COMPANY. VERSON ALLSTEEL PRESS COMPANY expressly reserves all rights it may have against other alleged tortfeasors.

I agree to hold harmless and indemnify VERSON ALLSTEEL PRESS COMPANY

from any loss or liability growing out of any claim against it for contribution or indemnity by any alleged tortfeasor.

In making this settlement, I do not rely on any statements or representations of any doctor, physician, or surgeon about my condition or about what my condition may be in the future as a result of said accident; and it is my intention that this Release be complete and shall cover all such damages and injuries, that it shall not be subject to any claim of mistake or fact, and that it expresses a FULL AND COMPLETE SETTLEMENT of a liability claimed and denied, and regardless of the adequacy or inadequacy of the amount paid, it is intended to avoid litigation and to be final and complete.

I further agree that I have read this Release and that there is absolutely no agreement or reservation not clearly expressed herein and that the consideration stated herein is all that I am ever to receive and is received with the full knowledge that it covers all possible claims by myself individually. I further agree to hold confidential the terms and conditions of this Release including, but not limited to, the amount of consideration paid.

IN WITNESS WHEREOF, and intending to be legally bound, I have hereunto set my hand and seal this 10 day of March, 1981.