## WINDEMULLER ELECTRIC COMPANY v BLODGETT MEMORIAL MEDICAL CENTER

Docket No. 59099. Submitted May 4, 1983, at Grand Rapids.—Decided October 25, 1983.

Windemuller Electric Company was awarded the contracts for the electrical work on a two-phase expansion project for Blodgett Memorial Medical Center. The contract for the manufacture and erection of aluminum window walls for Phase I was awarded to Lupton Manufacturing Company to which Consolidated Aluminum Corporation is the successor corporation. The contracts provided that, should a contractor delay or otherwise cause damage to the work of another contractor on the project, the delinquent contractor would assume responsibility and liability for such delay and damage, and the damaged contractor could assert his claim against the delinquent contractor as a third-party beneficiary. Windemuller brought suit in Kent Circuit Court against Blodgett and Consolidated Aluminum to recover damages for the delay in its work on both phases. Phase I concerned the construction of an ambulatory care center, a professional building, a power plant and a parking structure. Phase II involved the construction of a surgical wing and bed tower. The columns supporting the surgical wing began to sink into the ground. Blodgett entered into a settlement agreement with its architects in which Blodgett released the architects from liability for all architectural errors, including the sinking columns. The court, George R. Cook, J., directed a verdict for Consolidated on the Phase II claim and entered judgment on a jury verdict for plaintiff against Blodgett on Phases I and II and against Consolidated on Phase I. Blodgett appealed and Windemuller cross-appealed. *Held:*

1. The trial court erred in admitting evidence of the settlement agreement between Blodgett and its architects to prove the liability of Blodgett. The error was prejudicial to Blodgett.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 15A Am Jur 2d, Compromise and Settlement § 48.
29 Am Jur 2d, Evidence § 629.
[3] 5 Am Jur 2d, Appeal and Error § 797.
[4] 46 Am Jur 2d, Judgments §§ 127, 129.

The evidence concerned a substantive issue of the case: Blodgett's liability for delay suffered by the plaintiff in its work in Phase II. The judgment should be reversed insofar as it awards damages for Phase II.

2. The trial court did not err in directing a verdict for Consolidated on the Phase II claim.

Affirmed in part, reversed in part and remanded.

1. EVIDENCE — SETTLEMENT AGREEMENTS — RULES OF EVIDENCE.

The Michigan rule of evidence prohibiting the introduction of evidence of a settlement offer or acceptance rests on two considerations: (1) evidence of a settlement is not relevant to a party's liability since it may be motivated by a desire for peace rather than from a concession of the merits of the claim; and (2) it promotes the public policy favoring the compromise and settlement of disputes (MRE 408).

2. EVIDENCE — SETTLEMENT AGREEMENTS — RULES OF EVIDENCE.

Evidence of a settlement made by a party to a lawsuit with a third person is not admissible to prove the party's liability in the lawsuit (MRE 408).

3. EVIDENCE — PREJUDICIAL ERROR.

A determination of whether an error in a lawsuit was prejudicial depends on the circumstances of each case; once prejudical error is found, the lower court decision should be reversed and a new trial held.

4. MOTIONS AND ORDERS — DIRECTED VERDICT.

A trial court in ruling on a motion for a directed verdict should view the evidence, and all the legitimate inferences that may be drawn from the evidence, in a light most favorable to the nonmoving party and consider whether reasonable minds may differ as to questions of fact.

*Miller, Johnson, Snell & Cummiskey* (by *Jon G. March* and *Jurgen O. Skoppek*), for plaintiff.

*Warner, Norcross & Judd* (by *John H. Logie, J. A. Cragwall, Jr.,* and *Steven J. Vander Ark*), for defendant.

Before: D. E. HOLBROOK, JR., P.J., and R. M. MAHER and P. R. JOSLYN,* JJ.

PER CURIAM. Defendant Blodgett Memorial Medical Center (Blodgett) appeals from a jury verdict in favor of plaintiff. This case arose out of two separate construction contracts involving a hospital expansion project for Blodgett. Phase I of the project concerned the construction of an ambulatory care center, a professional building, power plant and a parking structure. During Phase II, a surgical wing and a bed tower were to be built. Plaintiff was awarded contracts for the electrical work on each phase. The contract for the manufacture and erection of aluminum window walls for Phase I was awarded to Lupton Manufacturing Company (Lupton), to which defendant Consolidated Aluminum Corporation is the successor corporation. The contracts provided that, should a contractor delay or otherwise cause damage to the work of another contractor on the project, the delinquent contractor would assume responsibility and liability for such delay and damage, and the damaged contractor could assert his claim against the delinquent contractor as a third-party beneficiary.

Plaintiff brought suit to recover damages for the delay in its work on Phase I and Phase II. These claims were treated separately at the trial. At the trial, plaintiff contended that both Lupton and Blodgett were responsible for the delay on Phase I. Plaintiff argued that Lupton failed to erect the aluminum window walls as scheduled, resulting in its termination by Blodgett and delay until a new contractor was found. Plaintiff maintained that Blodgett was responsible for the Phase I delay

* Circuit judge, sitting on the Court of Appeals by assignment.

because it failed to coordinate the work of the contractors. According to plaintiff, both Lupton and Blodgett were liable for the delay in its work on Phase II as well. Much of plaintiff's work on Phase II was on the surgical wing. In May, 1975, the columns supporting that structure began to sink into the ground. That problem, Blodgett admitted, stemmed from the improperly prepared plans and specifications of its architects. Plaintiff contended that the sinking-column problem contributed to the delay in its work on Phase II. According to the plaintiff, other contributing factors were Lupton's default on Phase I and Blodgett's delay in awarding a new window wall contract.

At the close of plaintiff's proofs, Consolidated moved for a directed verdict in its favor on plaintiff's claim for damages on Phase II. The trial court granted the motion over plaintiff's objection.

The jury returned a verdict in favor of plaintiff on Phase I against Blodgett in the amount of $45,460.40 and against Consolidated in the amount of $15,153.47. A verdict was rendered in favor of plaintiff against Blodgett on Phase II in the amount of $24,158.22.

Blodgett raises two issues on appeal.

First, Blodgett maintains that the trial court erred in admitting into evidence the settlement agreement between Blodgett and its architects. In that agreement, Blodgett released its architects from liability for all architectural errors on the project, including the sinking-column problem, in exchange for $408,000. Blodgett argues that evidence of the settlement agreement was inadmissible under MRE 408. That rule provides in pertinent part:

"Evidence of (1) furnishing or offering or promising to

furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount."

Blodgett maintains that evidence of the settlement agreement was inadmissible under MRE 408 even though the agreement was between Blodgett and a nonparty to the lawsuit.

Whether evidence of the settlement agreement between Blodgett and its architects was admissible under MRE 408 is a question of first impression in Michigan. The federal courts, however, have discussed similar issues as they arose under FRE 408 which is identical to our own rule. Consequently, we have drawn on federal authorities to resolve Blodgett's claim.

The rule rests on two considerations. First, evidence of a settlement is not relevant to a defendant's liability since it may be "motivated by a desire for peace rather than from a concession of the merits of the claim". *United States v Contra Costa County Water Dist,* 678 F2d 90, 91 (CA 9, 1982). (Footnote omitted.) A better justification for the rule, however, is that it promotes "the public policy favoring the compromise and settlement of disputes", FRE 408, Advisory Committee Note, a policy which is in force in this state. *Brewer v Payless Stations, Inc,* 412 Mich 673, 679; 316 NW2d 702 (1982); *Watts v Dep't of State,* 394 Mich 350, 357; 231 NW2d 43 (1975). The rule promotes that policy in the following manner: "By preventing settlement negotiations from being admitted as evidence, full and open disclosure is encouraged." *United States v Contra Costa County Water Dist, supra,* p 92.

The usual situation in which the rule applies is where the party who is offered a settlement uses that offer against the offeror at the trial of the lawsuit. Nevertheless, the federal authorities have concluded that the rule governs the admissibility of a completed settlement made by one party to the present lawsuit with a third person. The Advisory Committee's note explains:

"While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto. This latter situation will not, of course, ordinarily occur except when a party to the present litigation has compromised with a third person." FRE 408, Advisory Committee Note.

Federal case law reflects a similar position. In *Young v Verson Allsteel Press Co,* 539 F Supp 193 (ED Pa, 1982), the plaintiff sued Verson and Federal Pacific Electric Company. The plaintiff settled with Verson, and Federal sought to introduce evidence of the settlement to minimize its exposure to damages. The district court ruled that FRE 408 rendered evidence of that settlement inadmissible to mitigate Federal's damages. To admit the evidence would have an " 'unsettling' effect upon future compromise agreements". 539 F Supp 196. Thus, the "policy underlying Rule 408—encouraging settlements—" requires exclusion of the settlement. *Id.*

In *United States v Contra Costa County Water Dist, supra,* the plaintiff sued the water district and a third party for the cost of a retaining wall constructed by the government. The plaintiff settled with the third party and the water district argued that it should have been given credit for

the settlement figure. The Court of Appeals disagreed and, citing the purpose of FRE 408 to encourage settlements, held that evidence of the settlement was inadmissible.

While the above cases hold that third-party settlements are inadmissible to prove the amount of a claim, it is clear that the policy of encouraging settlements requires exclusion of such settlements to prove liability as well. See *Fidelity & Deposit Co of Maryland v Hudson United Bank,* 493 F Supp 434 (D NJ, 1980), *rev'd on other grounds* 653 F2d 766 (CA 3, 1981). We note that the rule excludes the admission of evidence of settlements "to prove *liability* for or invalidity of the claim or its *amount"*. (Emphasis added.) Therefore, we hold that, under MRE 408, evidence of a settlement made by a party to the present litigation with a third person is not admissible to prove liability.

In the instant case, the court admitted evidence of Blodgett's settlement with its architects to prove the liability of Blodgett. Thus, the trial court erred. Moreover, that error was not harmless. A determination as to whether an error is prejudicial may be made according to the standards set forth in *Ilins v Burns,* 388 Mich 504, 510-511; 201 NW2d 624 (1972):

"The question then arises as to whether or not the error was harmless under GCR 1963, 529. A finding of *prejudicial* error depends on the circumstances of each case (3 Honigman & Hawkins, Michigan Court Rules Annotated [2d ed], Comments, p 228); the excessiveness or unfairness of the verdict *(Ford v Cheever,* 105 Mich 679 [63 NW 975 (1895)]; *McDonald v Champion Iron & Steel Co,* 140 Mich 401 [103 NW 829 (1905)]); the intent of counsel in introducing such evidence *(Cluett v Rosenthal,* 100 Mich 193 [58 NW 1009 (1894)]; *Nemet v Friedland,* 273 Mich 692 [263 NW 889 (1935)]); and

whether the evidence went to the substantive issues of the case *(Burns v Kieley's Estate,* 242 Mich 668 [219 NW 743 (1928)])."

"Once prejudicial error is found, the cases call for reversal regardless of whether the trial judge gave an instruction in an attempt to cure the error. *Potentially* prejudicial error can be cured. Prejudical error, however, implies a conclusion that the substantial rights of the party were affected. Such error calls for reversal and new trial." (Footnote omitted; emphasis in original.)

The damage award in this case was not excessive. However, the record reveals that plaintiff's counsel introduced evidence of the settlement to prove Blodgett's liability for plaintiff's claim of damages due to delay. Furthermore, the evidence went to a substantive issue of the case—Blodgett's liability. Thus, the court's error was prejudicial.

The court's prejudicial error does not require reversal of the entire judgment. The evidence of the settlement pertained only to Blodgett's liability for the delay suffered by plaintiff in its work on Phase II. Separate proofs were offered at trial as to each phase, the trial court instructed the jury separately as to each phase, and the jury returned a separate verdict on each phase. Therefore, we reverse the judgment only insofar as it awards damages for Phase II.

Blodgett's final allegation of error challenges the trial court's ruling granting Consolidated's motion for a directed verdict on the claim concerning Phase II of the project. Upon a motion for directed verdict, the trial court must view the evidence, and all the legitimate inferences that may be drawn from the evidence, in a light most favorable to the nonmoving party and consider whether reasonable minds may differ as to questions of fact. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975). We have considered the evidence in light

of this standard and have concluded that the trial court did not err in directing a verdict in favor of Consolidated.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.